NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 5, 2009*
Decided October 6, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1065

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | 06-CR-158 |
| PERRIS D. CANNADAY, *Defendant-Appellant*. | Charles N. Clevert, Jr. *Chief Judge*. |

**O R D E R**

Perris Cannaday pleaded guilty to possessing five grams or more of cocaine base, *see* 21 U.S.C. § 844(a), following a traffic stop in which he was found carrying 6.87 grams of crack cocaine. The district court, relying both on stipulations in the plea agreement and a presentence investigation report ("PSR") that Cannaday accepted without objection, found that he was accountable for nearly 1,500 grams of crack cocaine, including 1,474 grams later seized from Cannaday's house. Accordingly, the district court sentenced him to 135 months' imprisonment, the bottom of the applicable guidelines range. Cannaday appeals this sentence, arguing that he was denied the right to allocute and that the district court should not have considered the drugs seized from his house as relevant conduct. Because he did allocute and waived any objection to including those drugs, we affirm.

In 2004 police officers in Milwaukee, Wisconsin, stopped Cannaday (who was wanted on an outstanding warrant) in his car and found 6.87 grams of cocaine base in his pocket.  Later that day the officers obtained a search warrant for Cannaday's house, where they found 1,474 grams of cocaine base.  In September 2006 a federal grand jury charged Cannaday with possession with intent to distribute more than five grams of cocaine base (for the drugs seized from his house), *see* 21 U.S.C. § 841(a)(1), and simple possession of five grams or more of cocaine base (for the drugs seized from his pocket), *see* 21 U.S.C. § 844(a).  Cannaday pleaded guilty to the simple possession count, and in accordance with the written plea agreement, the government moved to dismiss the distribution count.

The relevant conduct used to determine Cannaday's sentence was based on the following.  In the plea agreement Cannaday stipulated that the government was able "to establish by a preponderance of the evidence that the drug quantity attributable to the defendant is between 500 grams and 1.5 kilograms of cocaine base in the form of 'crack' cocaine."  He further agreed that the applicable guideline was U.S.S.G. § 2D1.1(c)(2), the provision for offenses involving between 500 grams and 1.5 kilograms of cocaine base.  Later, at the change of plea hearing, Cannaday admitted that he had possessed the 6.87 grams of crack for personal use and further acknowledged that in determining his sentence, the court would consider all his relevant conduct and the weight of the drugs attributable to him.  A probation officer calculated in the PSR that Cannaday's base offense level was 36, based on the quantity of drugs seized during the traffic stop and from his home.  The officer relied on a letter from Cannady's counsel, agreeing that the officer would use the 1,474 grams of cocaine base seized from his house to determine his relevant conduct.  Cannaday did not object to the PSR.

The court held two sentencing hearings with Cannaday present.  At an initial sentencing hearing in July 2007, the district court confirmed that, except for one correction to Cannaday's criminal history category, the parties had no objections to the PSR.  The court calculated the applicable guidelines range as 168 to 210 months, heard from both counsel and Cannaday, and adjourned the hearing to allow the probation officer to gather additional information.  When the hearing reconvened in November 2007, amendments to the applicable sentencing guidelines had become effective, including reduced offense levels for most crack-cocaine crimes.  The court determined that Cannaday's applicable guidelines range was now 135 to 168 months.  The court invited both Cannaday and his counsel to comment on the PSR and its addendum.  After his counsel spoke, Cannaday talked about his enrollment in a GED program and concern for his family, and closed by saying, "Other than that, Your Honor, I'm just here today to accept responsibility for my action, and I just want to get this whole thing behind me."  The court then imposed a sentence of 135 months' imprisonment.

On appeal Cannaday first argues that the district court denied him the right to a meaningful allocution by asking counsel about any objections to the PSR and by failing to tell Cannaday that he was about to be sentenced before asking him if he wished to speak. Because he did not raise these objections at sentencing, our review is for plain error. *See United States v. Hoke*, 569 F.3d 718, 721 (7th Cir. 2009).

Our review of the sentencing transcripts shows that the district court afforded Cannaday his right to allocution. Federal Rule of Criminal Procedure 32(i) provides that a sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." FED. R. CRIM. P. 32(i)(4)(A)(ii); *see Green v. United States*, 365 U.S. 301, 304 (1961); *United States v. Luepke*, 495 F.3d 443, 448-49 (7th Cir. 2007). The defendant's opportunity to allocute must occur before the final imposition of sentence so that the defendant's "request for mercy" may be factored into the sentencing decision. *United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991); *see Luepke*, 495 F.3d at 450; FED. R. CRIM. P. 32(i)(4)(A)(ii). That was done here. At the reconvened sentencing hearing in November, the court personally addressed Cannaday, permitting him to speak at length before imposing the final sentence. The court specifically asked Cannaday if he and his counsel had a chance to consider all of his concerns with respect to sentencing, the PSR, and the addendum. Cannaday responded affirmatively, without raising any objections.

Additionally, comments from Cannaday's counsel did not interfere with his right to allocute. Cannaday's counsel told the court that, save for one correction to the criminal history category, Cannaday had no objection to any of the facts in the PSR or the addendum. But this comment did not deny Cannaday an opportunity to raise personally any concerns he had about the PSR or guidelines calculation. Rather, the court gave him an open-ended invitation to speak at both portions of the sentencing hearing on any topic. *See United States v. Williams*, 258 F.3d 669, 674-75 (7th Cir. 2001) (holding that court's question to defendant "is there anything that you would like to say" was unambiguous invitation for allocution not limited to a particular issue). This procedure was all that the rule for allocution required. *See Hoke*, 569 F.3d at 721-22; *Williams,* 258 F.3d at 675. The court did not deny Cannaday his right to allocution and thus did not commit plain error.

Cannaday next argues that the district court improperly increased his base offense level by including as relevant conduct the drugs seized from his residence. He contends, first, that the district court did not make the necessary factual findings to show that he was responsible for the additional amount. Second, he cites *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998), to argue that unlike the 6.87 grams he held for personal use, the 1,474 grams were intended for distribution and therefore cannot be part of the same common scheme or plan under U.S.S.G. § 1B1.3. But Cannaday stipulated in his plea agreement that

the government could establish by a preponderance of the evidence that he was responsible for between 500 grams to 1.5 kilograms of cocaine base. He further agreed that the corresponding base offense level under § 2D1.1(c)(2) (the base offense level for cocaine base between 500 grams and 1.5 kilograms) applied. And, although the plea agreement does not state the factual basis for including the additional cocaine base, Cannaday admitted that basis through counsel, in a letter later sent to the probation officer, by stating that the cocaine base seized from his house, 1,474 grams, was relevant conduct.

Under these circumstances, Cannaday has waived his objections to including the cocaine base seized from his home as relevant conduct. Admissions in a plea agreement conclusively establish admitted facts, and are "even better than a jury's finding beyond a reasonable doubt." *United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002); *see United States v. Krasinski*, 545 F.3d 546, 552 (7th Cir. 2008). The court properly considered Cannaday's stipulations in the plea agreement (to the offense level and drug quantities for which he was responsible) as well as the facts and admissions described in the PSR—which Cannaday accepted without objection—to calculate the relevant drug quantity and applicable guidelines range. *See United States v. Cole*, 569 F.3d 774, 777-78 (7th Cir. 2009) (citing U.S.S.G. § 6B1.4). Because Cannaday cannot now contest these admissions, we will not disturb the district court's findings as to the relevant drug quantity and corresponding offense level. *See United States v. Siegler*, 272 F.3d 975, 978 (7th Cir. 2001) (explaining that defendant's admissions in written plea agreement and at change of plea hearing constituted waiver of any subsequent challenge); *United States v. Newman*, 148 F.3d 871, 878 (7th Cir. 1998) (refusing to disturb sentencing court's amount-of-loss calculation based on defendant's stipulations to loss amount in plea agreement); *United States v. Flores-Sandoval*, 94 F.3d 346, 349 (7th Cir. 1996) (holding that defendant waived any challenge to facts stipulated in plea agreement where defendant had agreed that facts constituted relevant conduct for sentencing purposes).

Finally, Cannaday claims that his counsel was constitutionally ineffective by informing the probation officer, without his authorization Cannaday asserts, that he had stipulated to the facts supporting the inclusion of 1,474 grams of crack as relevant conduct and by failing to object to its inclusion as relevant conduct at sentencing. We have repeatedly explained that a claim of ineffective assistance is best reserved for collateral review where the necessary record can be developed. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Spence*, 450 F.3d 691, 694 (7th Cir. 2006); *United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir. 1997) (explaining that ineffective assistance claims rarely find any factual support in the trial record "and an adverse determination on direct appeal will be res judicata in any subsequent collateral attack"). This case is no exception. Accordingly, we decline to address Cannaday's claim of ineffective assistance at this time.

We therefore AFFIRM the judgment of the district court.